certiorari . . . [had] elapsed." *Caspari*, 510 U.S. at 390 (emphasis added).

Finally, we note that if Wheeler's position were adopted, state court judgments would never attain finality because they would always be subject to reconsideration on a motion for a delayed appeal. The present case provides a striking illustration. According to Wheeler, his conviction only became "final" in 1996, *twenty-five years* after he was convicted.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0310P (6th Cir.)
File Name: 00a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DANIEL WHEELER,
    *Petitioner-Appellant,*

    *v.*                                     No. 99-1008

KURT JONES,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 97-00092—David W. McKeague, District Judge.

Argued: August 11, 2000

Decided and Filed: September 11, 2000

Before: KEITH, COLE, and GILMAN, Circuit Judges.

———————

### COUNSEL

**ARGUED:** Corinne Beckwith, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellant. Vincent J. Leone, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:** David A. Moran, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF

THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

————————————

**OPINION**

————————————

RONALD LEE GILMAN, Circuit Judge. In 1971, a Michigan jury convicted Daniel Wheeler of first-degree murder and sentenced him to a term of life imprisonment without parole. Wheeler did not exercise his right to a direct appeal. Subsequently, however, he filed two applications for leave to file a delayed appeal. In 1989, upon consideration of Wheeler's second application for a delayed appeal, the Michigan Supreme Court determined that Wheeler's case warranted further review and remanded it to the Michigan Court of Appeals. The Michigan courts ultimately denied Wheeler relief.

In 1998, Wheeler filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing, among other things, that the state court's jury instructions on the issue of establishing criminal intent by the use of presumptions violated his Fourteenth Amendment right to due process of law pursuant to *Sandstrom v. Montana*, 442 U.S. 510 (1979) (holding that a jury instruction that eliminates or shifts a state's burden to prove every element of an alleged crime beyond a reasonable doubt violates a defendant's due process rights). The district court denied Wheeler's petition, finding that his conviction had become final in 1971, thus preventing him from taking advantage of the new rule announced eight years later in *Sandstrom*. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) (holding that new rules of criminal procedure cannot be applied retroactively except in very limited circumstances). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

Court remanded his application for a delayed appeal to the Michigan Court of Appeals for review. It concluded that "allowing a delayed application . . . to determine retroactive application does not comport with the concerns of finality found in the limitations placed on federal habeas review."

On appeal, Wheeler reiterates his argument that "[w]hen the Michigan Supreme Court ordered the Court of Appeals to consider . . . [his] appellate claims on the merits, that action signified that . . . Wheeler's direct appeal was still alive, and that his conviction was not yet final." The Michigan courts disagreed. In its January 9, 1995 opinion, the Michigan Court of Appeals affirmed the state trial court's decision that Wheeler had not received ineffective assistance of counsel. The Court of Appeals rejected Wheeler's attempted reliance on *Sandstrom*, stating that "*Sandstrom* applied retroactively only to those cases that raised the issue of jury instructions and were pending on direct appeal at the time of *Sandstrom* in 1979." *People v. Wheeler*, No. 126769, at 4 (Mich. Ct. App. Jan. 9, 1995). As the State points out, "if the [Court of Appeals] truly considered that it was deciding a direct appeal it would not have had to consider the retroactivity of *Sandstrom*."

Moreover, the Michigan courts have generally adopted the view that long-delayed appeals are not regarded as a part of a defendant's direct appeal. *See People v. Ward*, 594 N.W.2d 47, 52 (Mich. 1999) (rejecting a defendant's argument that his delayed appeal, filed more than twelve months after his conviction, was part of his direct appeal, and holding that "long delayed direct appeals are deemed collateral"); *People v. Erwin*, 536 N.W.2d 818, 824 (Mich. Ct. App. 1995) (same). By this measure, Wheeler's second application for leave to file a delayed appeal, filed seventeen years after his conviction, would undoubtedly be classified as a collateral rather than a direct appeal. Based on these rulings by the Michigan courts and the dictates of *Caspari*, we conclude that Wheeler's conviction became final in 1971, when "the availability of *direct* appeal to the state courts [was] exhausted and the time for filing a petition for a writ of

The district court granted Wheeler a certificate of appealability on January 25, 1999, limited to the single issue of whether Wheeler's conviction had become final before *Sandstrom* was decided. On June 4, 1999, this court declined to grant review on any other issues.

## II.  ANALYSIS

### A.  Standard of review

On appeal from the denial of a petition for a writ of habeas corpus, we review the district court's legal conclusions de novo, and will not disturb its findings of fact unless they are clearly erroneous. *See Nevers v. Killinger*, 169 F.3d 352, 357 (6th Cir.), *cert. denied*, 527 U.S. 1004 (1999). The question of whether the grant of a delayed appeal revives a defendant's direct appeal in Michigan is a question of law to be reviewed de novo.

### B.  Wheeler's conviction became final when his ability to file a direct appeal as of right expired

The sole issue presented in this appeal is whether Wheeler's conviction had become final when *Sandstrom* was decided in 1979. In *Caspari v. Bohlen*, 510 U.S. 383 (1994), the Supreme Court set forth the following inquiry for assessing finality: "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Id*. at 390.

Citing the *Caspari* rule, the district court concluded that Wheeler's conviction became final forty-two days after the jury returned its verdict, which is when his time for filing a direct appeal as a matter of right with the Michigan Court of Appeals expired. (Adding forty-two days to the date of Wheeler's conviction yields the date of May 6, 1971.) The district court rejected Wheeler's argument that his direct appeal was "revived" in 1990 when the Michigan Supreme

## I.  BACKGROUND

### A.  State court proceedings

The Michigan Court of Appeals summarized the underlying facts of this case as follows:

This case stems from the 1970 death of then sixteen-year-old Erlinda Paz, who was [Wheeler]'s former girlfriend. Paz's body was discovered in a wooded lot in February of that year. Lacerations were present on her scalp and forehead. Additionally, a portion of Paz's scalp, approximately the size of a closed hand, was missing from the back of her head. Tests revealed that Paz, who was two and a half months pregnant, had had sexual intercourse within hours prior to her death. There was no evidence to suggest that Paz had been raped. The medical examiner stated that Paz's injuries were consistent with a highway accident. More specifically, the doctor theorized that Paz's scalp could have been loosened by the undercarriage of a traction mechanism or motor vehicle. Alternatively, the medical examiner stated that these injuries could have been caused by a gun barrel with a sharp margin. A shotgun barrel was found in the proximity of Paz's body.

Testimony at trial revealed that Paz had written a letter informing [Wheeler] that he was the father of the child that she was carrying. [Wheeler], who acknowledged that he received the letter, was allegedly upset upon learning that the child was his. One witness who was then a friend of [Wheeler]'s testified that [Wheeler] offered him $10 to hit Paz in the stomach prior to her disappearance and death. Another friend of [Wheeler]'s, John Ostrander, testified that a few days before Paz was reported missing, [Wheeler] told him that he was going to kill her. According to Ostrander, [Wheeler] later informed him that he had killed Paz with a gun barrel. Ostrander further testified that [Wheeler] asked him to help bury the body. After this request was made, Ostrander claimed that [Wheeler] drove him to the

remote location where Paz's body was eventually discovered. The two men were unable to locate Paz's body on this occasion. Finally, Ostrander stated that [Wheeler] asked him to provide a false alibi to the police if and when he was ever questioned about Paz's death.

Another friend of [Wheeler]'s, Rick LaMothe, testified that prior to Paz's disappearance, [Wheeler] had taken him to the remote location where her body was eventually discovered. LaMothe claimed to have seen [Wheeler] cut the barrel off of a shotgun in January of 1970, approximately one month before Paz's body was discovered. This testimony was corroborated by [Wheeler]'s mother who testified that [Wheeler] had taken a shotgun from the family home and sawed it off. A crime laboratory technician testified that the shotgun barrel found near Paz's body matched the weapon that [Wheeler] had sawed off.

. . .

Janette Bucholz testified that she met [Wheeler] between 7:00 and 7:30 p.m. on the same day that Paz disappeared. According to Bucholz, [Wheeler] looked "exhausted" when he arrived. Further, Bucholz claimed that [Wheeler] had blood stains on his hands and pants. Bucholz said that [Wheeler] explained that he had been in a fight with two men. Another woman, Nancy Gerding, heard [Wheeler] ask to wash the blood off of his hands. Finally, Gerding said that [Wheeler] claimed to have used a pipe to defend himself in the fight with the two men.

*People v. Wheeler*, No. 126769, at 1-2 (Mich. Ct. App. Jan. 9, 1995).

On March 24, 1971, a jury found Wheeler guilty of first-degree premeditated murder. He was thereafter sentenced by the state trial judge to life imprisonment without the possibility of parole. Wheeler did not exercise his right to a direct appeal.

In 1977, Wheeler filed an application for a delayed appeal pursuant to Rule 7.205 of the Michigan Court Rules. On December 16, 1977, the Court of Appeals of Michigan remanded the case to the trial court to determine Wheeler's competency to stand trial *nunc pro tunc*. Following an evidentiary hearing, the trial court found that Wheeler had indeed been competent to stand trial. Wheeler did not appeal this finding.

In 1988, Wheeler filed a second application for a delayed appeal, alleging that he had been denied a fair trial due to certain inappropriate statements made by the prosecutor, and that he had received the ineffective assistance of counsel. The Michigan Court of Appeals denied this application. Wheeler appealed. On March 7, 1990, the Michigan Supreme Court concluded that Wheeler's claims warranted further review and remanded the case to the Court of Appeals with instructions to consider Wheeler's delayed appeal "as on leave granted." *People v. Wheeler*, No. 86310 (Mich. Mar. 7, 1990).

The Court of Appeals, in turn, remanded the matter to the trial court for an evidentiary hearing on Wheeler's ineffective assistance of counsel claim. On December 17, 1992, after conducting such a hearing, the trial court concluded that Wheeler's counsel had not been constitutionally ineffective. The Michigan Court of Appeals affirmed and, on February 2, 1996, the Michigan Supreme Court denied leave to appeal.

## B.    Federal court proceedings

On February 4, 1997, Wheeler filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. Wheeler raised four claims, including a challenge to the trial court's jury instructions based on *Sandstrom*. The district court denied Wheeler relief, concluding that he could not take advantage of the rule announced in *Sandstrom* in 1979 because his conviction had become final in 1971. It also found Wheeler's other claims to be without merit.