Stanley NOOK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10311.

Court of Appeals of Alaska.

April 8, 2011.

---

and recommendations of discipline made by the [Disciplinary] Board").

2. *In re Cyrus*, 241 P.3d 890, 892 (Alaska 2010).

3. *Id.*

Jane B. Martinez, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

In September, 1999, Stanley Nook was tried and found guilty of second-degree murder. He was represented during this litigation by attorney Scott Sidell.

Three and a half years later, in February, 2003, the Alaska Bar Association and Mr. Sidell asked the Alaska Supreme Court to resolve a disability matter involving Sidell by transferring Sidell to inactive status based on disability. On March 14, 2003, the supreme court approved this resolution of Sidell's case; the court transferred Sidell to inactive status, and the court ordered Sidell not to practice law until he successfully applied for reinstatement to active status. The supreme court made its order retroactive by five years. The court's order states that Sidell's transfer to inactive status was effective, *nunc pro tunc,* as of January 1, 1998.

After the supreme court issued this order, Nook filed an application for post-conviction relief. He contended that, because the supreme court made its order retroactive to January 1, 1998, Sidell was not authorized to practice law when he represented Nook in 1999. Nook argued that he was therefore denied his right to the assistance of counsel. Nook further argued that, because representation by Sidell was effectively the same as having no attorney at all, Nook did not have to prove that he was prejudiced by any particular aspect of Sidell's actions or decisions in his case.

In an extensive and well-researched decision, Superior Court Judge Leonard R. Devaney rejected Nook's contention that he was essentially unrepresented during the 1999 litigation of his criminal case. Judge Devaney held that, even if the supreme court's order was interpreted as meaning that Sidell was not authorized to practice law when he represented Nook, Nook still had to show that he was prejudiced by Sidell's actions (or inactions) in one or more ways.

Having reached this decision, Judge Devaney gave Nook sixty days to amend his petition for post-conviction relief to allege specific ways in which he was harmed by Sidell's representation. After Nook indicated that he did not intend to amend his petition, Judge Devaney dismissed the petition.

Nook now appeals. We agree with Judge Devaney that, despite the supreme court's decision to retroactively transfer Sidell to inactive status as of January 1998, Nook was nevertheless required to show that Sidell's representation of him was incompetent in one or more ways, and that there is a reasonable possibility that Nook was harmed by Sidell's

incompetence. Accordingly, we affirm the superior court's dismissal of Nook's petition.

*Factual background of the Alaska Supreme Court's order placing Sidell on inactive status due to disability*

In October 2000, William Keppel sued Sidell for legal malpractice in connection with a personal injury lawsuit in which Sidell represented Keppel. After Sidell failed to respond to this malpractice claim, the superior court entered judgment against him. Additionally, the court concluded that Sidell's conduct had been willful and malicious. The superior court awarded Keppel approximately $675,000 in damages, including punitive damages.

In 2002, Sidell retained a law firm to represent him in attempting to overturn the superior court's judgment. Sidell's attorneys arranged for him to be evaluated by a psychiatrist and a psychologist. Both submitted affidavits in which they concluded that Sidell was suffering from chronic depression, and one stated that this depression had started as early as 1996. According to them, Sidell's depression made him incapable of meeting his responsibilities as a lawyer.

Based on these psychiatric evaluations, Sidell's attorneys filed a motion for relief from the judgment in the malpractice case. They argued that Sidell had not acted willfully, and that he had been unable to represent either himself or others because of his mental illness.

At about the same time, Sidell entered into an agreement with the Bar Counsel for the Alaska Bar Association. Under the terms of this agreement, and subject to the approval of the Alaska Supreme Court, Sidell would be transferred to inactive status based on disability retroactive to January 1, 1998.[1] The Alaska Supreme Court approved this agreement and issued a corresponding order on March 14, 2003.

*The effect of the supreme court's order*

Our primary task in this appeal is to determine the legal effect of the supreme court's order with respect to Nook's case and all other litigation in which Sidell served as an attorney between January 1, 1998 (the retroactive effective date of Sidell's disability status) and March 14, 2003 (the day the supreme court issued the order that formally divested Sidell of his privilege to practice law).

As we explained earlier, Nook argues that because the supreme court placed Sidell on disability status retroactively as of January 1, 1998, any client who was represented by Sidell after January 1, 1998 was effectively in the position of having no attorney. Based on this premise, Nook argues that he is exempt from having to prove that Sidell represented him incompetently. Rather, Nook asserts, he is entitled to automatic reversal of his criminal convictions, just as if he had been forced to go to trial without a lawyer.

We reject Nook's position for two reasons.

First, we disagree with Nook's assertion that being represented by Sidell in 1999 was the legal equivalent of having no lawyer at all.

There are, indeed, some circumstances where a defendant is excused from making a specific showing of attorney incompetence—*i.e.*, excused from proving that their attorney committed specific errors, and showing those errors might have prejudiced the defendant's case. One circumstance is where the defendant is represented by someone who has never properly been admitted to the practice of law.[2]

For instance, in *Solina v. United States*,[3] the Second Circuit held that where the defendant's attorney had not finished law school and had not been admitted to any bar, this alone was sufficient to establish that the attorney was ineffective. The court reasoned that an individual who is fraudulently acting as an attorney is committing an ongoing

---

1. *See* Alaska Bar Rule 30.

2. *See, e.g., United States v. Bergman,* 599 F.3d 1142, 1147–48 (10th Cir.2010) (adopting narrow per se rule where criminal defendant was represented by someone who was never admitted to practice law); *United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990) (applying a per se rule of ineffective assistance where purported attorney's admission to bar was fraudulent).

3. 709 F.2d 160 (2d Cir.1983).

crime, and that "such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials."[4] Other courts have followed this analysis.[5]

But courts have refused to extend this analysis to cases where the defendant was represented by a licensed attorney who, unbeknownst to himself, had been suspended or disbarred before or during the defendant's trial.[6]

*United States v. Stevens,*[7] a Tenth Circuit case, presents circumstances which appear similar to Nook's case. In *Stevens,* "[everyone] present in the courtroom at the time of trial thought that . . . counsel was a member of the bar of that court."[8] But after trial, it turned out that the defendant's counsel had been disbarred, without notice, at the time of trial. The *Stevens* court held that even though the defendant's attorney was technically not licensed to practice law at the time of trial, this fact did not relieve the defendant of the burden of proving specific instances where his attorney had acted incompetently and he had been prejudiced.[9]

Even if Nook is correct that the supreme court's order retroactively deprived Sidell of the authority to practice law in 1998 and 1999, Nook's case would be similar to the facts of *Stevens.* As in *Stevens,* there was absolutely no indication at the time of Nook's trial that Sidell was unauthorized to practice law. Indeed, Nook's case presents even stronger facts than *Stevens*—because even the most assiduous inquiry conducted at the time of Nook's trial (September 1999) would not have revealed any defect in Sidell's authority to practice law.

We previously dealt with a related aspect of Sidell's disability in *Mute v. State,*[10] an unpublished decision. Mute had been represented by Sidell, and he argued, based upon the supreme court's order, that Sidell must have provided him with ineffective assistance of counsel. Mute's case was different than Nook's, because Sidell represented Mute before January 1, 1998 (the effective date of the supreme court's order). Still, Mute relied on the affidavits filed by the mental health professionals whose evaluations of Sidell strongly suggested that Sidell was depressed at the time he represented Mute.

We held that even if the psychiatric evaluations were accepted as true, Mute was not entitled to automatic reversal of his criminal case:

> Even though Mute put forth evidence that Sidell may have been clinically depressed at the time he represented Mute, Mute still had to prove (1) that counsel's conduct fell below the minimal range of competence required of an attorney with ordinary training and skill in the criminal law, and (2) that this lack of competency contributed to his conviction.[11]

In other words, we required Mute to show both that there were specific flaws in Sidell's performance as an attorney, and that Sidell's deficiencies resulted in identifiable prejudice to Mute's defense.

Despite the fact that Nook's case was tried in 1999 (*i.e.,* after the January 1, 1998 retroactive starting date of Sidell's inactive status), we likewise conclude that Nook is not entitled to automatic reversal of his convic-

---

4.  *Id.,* at 162, 164.

5.  *Bergman,* 599 F.3d at 1147–48; *United States v. Watson,* 479 F.3d 607, 611 (8th Cir.2007). *See generally* 3 Wayne R. LaFave, *Criminal Procedure* § 11.8(c), at 862–63 (3d ed. 2007).

6.  *See United States v. Mitchell,* 216 F.3d 1126, 1132 (D.C.Cir.2000); *United States v. Stevens,* 978 F.2d 565, 567–68 (10th Cir.1992); *Waterhouse v. Rodriguez,* 848 F.2d 375, 383 (2d Cir. 1988); *see also Young v. Runnels,* 435 F.3d 1038, 1043 (9th Cir.2006) (declining a per se rule where counsel was disbarred post-trial for pretrial conduct).

7.  978 F.2d at 568.

8.  *Id.,* at 568

9.  *Id.*

10.  Alaska App., Memorandum Opinion & Judgment No. 5282 (Dec. 12, 2007), 2007 WL 4323004.

11.  *Id.,* 2007 WL 4323004 at *3.

tion, but he is instead required to prove specific acts of attorney incompetence and resulting prejudice.

We reach this conclusion for a second reason as well.

When the Alaska Supreme Court issued its order transferring Sidell to inactive status, the court was acting in its role as the ultimate regulator of the practice of law in Alaska.[12] The only two parties in front of the supreme court were Sidell and the Bar Association (through its Bar Counsel), and the matter before the court was a disability matter.

Given the nature of that legal proceeding, it is unlikely that the supreme court intended its order to have the effect of automatically overturning all of the court judgments and settlement agreements in every case that Sidell participated in, going back five years to January 1, 1998. Moreover, even if the supreme court *had* intended such a result, we believe that the constitutional guarantee of due process of law would prevent the supreme court from achieving this result.

As we have explained, the only two parties in front of the supreme court were Sidell and the Bar Association. None of Sidell's clients—and, just as importantly, none of those clients' opponents—were in front of the court. Without personal jurisdiction over the litigants whose interests were at stake, the supreme court could not set aside the results of every civil and criminal case that Sidell participated in for the preceding five years.[13]

Indeed, we note that after the supreme court issued its order, the superior court judge who was handling the malpractice lawsuit against Sidell refused to give that order preclusive effect.

As we explained earlier, after Sidell defaulted in the malpractice case, he sought to have the judgment set aside on the ground that his mental problems disabled him from mounting a proper defense to the lawsuit. Sidell relied on the supreme court's order for the proposition that he was incompetent from 1998 onward, but the superior court rejected

Sidell's assertion. The superior court found that Sidell's "degree of participation in this [malpractice] suit indicates more than periodic competency," and the court noted that several attorneys had filed affidavits "asserting that Mr. Sidell competently represented other clients ... during this period."

When Judge Devaney issued his decision in Nook's case, he adopted a similar interpretation of the supreme court's order:

The Alaska Supreme Court is well aware that Bethel is a high volume trial venue ..., and that the [Office of Public Advocacy, for whom Sidell worked under contract,] routinely and frequently represents clients as conflict counsel. It could not have been the intent of the [supreme] court to retroactively reverse every case handled by Mr. Sidell from 1998 to 2003, including the entirety of the period he held the OPA contract.

We agree that the supreme court's order did not have the effect of automatically reversing the result of all litigation conducted on or after January 1, 1998 in which Sidell participated.

*Conclusion*

Despite Sidell's mental health problems, and despite the supreme court's order placing Sidell on inactive status retroactively starting January 1, 1998, Nook was not entitled to automatic reversal of his conviction. Instead, Nook was required to prove that Sidell represented him incompetently in one or more respects, and that there was a reasonable possibility that Nook was prejudiced by this incompetent representation. When the superior court gave Nook the opportunity to amend his petition for post-conviction relief to allege specific ways in which Sidell represented him incompetently, Nook declined to amend his petition. Accordingly, the superior court properly dismissed Nook's petition. The judgment of the superior court is AFFIRMED.

**12.** *See In re Stephenson,* 511 P.2d 136, 141 (Alaska 1973).

**13.** *See Alaska Marine Pilots v. Hendsch,* 950 P.2d 98, 112 (Alaska 1997).