NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

HAROLD SAKAR,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11603
Trial Court No. 4BE-98-124 CR

O P I N I O N

No. 2617 — September 7, 2018

Appeal from the Superior Court, Fourth Judicial District, Bethel, Dale O. Curda, Judge.

Appearances: Kelly Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In 1999, Harold Sakar was brought to trial on charges of kidnapping and two counts of first-degree sexual assault. He was defended by attorney Scott Sidell, who was the contract attorney for the Office of Public Advocacy in the Bethel area.

Sakar was found guilty, and in June 2000 he was sentenced for these crimes. Sidell told Sakar that he would file an appeal, but (unbeknownst to Sakar) Sidell failed to do so.

Sidell had apparently been suffering from depression. In early 2003 (about two and a half years after Sakar's sentencing), Sidell and discipline counsel for the Alaska Bar Association entered into a stipulation that Sidell would be placed on inactive status because of disability, retroactive to January 1, 1998. [1] In March 2003, the Alaska Supreme Court approved this resolution of Sidell's bar status.

Also in 2003, Sakar learned that Sidell had not filed the promised appeal of his convictions. Sakar filed an application for post-conviction relief, alleging ineffective assistance of counsel. The superior court ultimately ruled that Sidell had been ineffective when he failed to appeal Sakar's convictions, and that Sakar was now entitled to file a belated direct appeal.

In this belated appeal, Sakar argues that the supreme court's order retroactively placing Sidell on disability status as of January 1, 1998 entitles him to an automatic reversal of his conviction, even though Sakar has not shown that Sidell's performance in his case was deficient in any identifiable way.

Sakar acknowledges that this Court previously rejected this same argument (raised by a different client of Sidell) in *Nook v. State*. [2] However, Sakar contends that

---

[1]  *See Nook v. State*, 251 P.3d 358, 359 (Alaska App. 2011).

[2]  251 P.3d 358 (Alaska App. 2011).

*Nook* was wrongly decided. Alternatively, he argues that his case is distinguishable from *Nook*.

For the reasons explained in this decision, we conclude that Sakar has failed to show either that *Nook* was originally erroneous or that Sakar's case is distinguishable from *Nook*.

Sakar raises one more claim on appeal: he asserts that the superior court enhanced his sentence in violation of his Sixth Amendment right to jury trial as construed in *Blakely v. Washington*. [3] We reject this claim because Sakar's conviction was entered approximately four years before *Blakely* was decided, and because the Alaska Supreme Court has held that *Blakely* is not retroactive. [4]

*Why we re-affirm our decision in <u>Nook</u>, and why we reject Sakar's argument that his case is distinguishable from <u>Nook</u>*

In *Nook v. State*, we rejected the argument that Sidell's retroactive disability status entitled all defendants who were represented by Sidell after January 1, 1998 to claim automatic reversals of their convictions. [5] Our opinion in *Nook* sets out the reasons why a rule of automatic reversal was both unmerited and contrary to the Alaska Supreme Court's intent when it approved the disability stipulation between Sidell and the Bar Association. [6]

---

[3] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[4] *State v. Smart*, 202 P.3d 1130, 1135 (Alaska 2009).

[5] *Nook*, 251 P.3d at 362.

[6] *Ibid.*

Sakar argues that our decision in *Nook* was originally erroneous, and that we should now overrule *Nook*. We have considered Sakar's arguments, and we remain convinced that *Nook* is good law.

Sakar argues in the alternative that the *Nook* decision has been undermined by the testimony given by several witnesses at the evidentiary hearing in Sakar's post-conviction relief action — witnesses who were critical of Sidell's general performance during his tenure as an OPA contract attorney.

But the testimony of these witnesses does not undermine the conclusion that we reached in *Nook* — the conclusion that, regardless of what might be said about Sidell's performance in general, any individual defendant who asserts a claim of ineffective assistance of counsel against Sidell must show (1) that Sidell's performance *in their specific case* fell below the minimum standard of competence that we expect of criminal defense attorneys, and (2) that there is a reasonable possibility that this incompetent performance affected the outcome of the defendant's trial.[7]

At oral argument in this case, Sakar's appellate attorney conceded that the record of Sakar's trial does not reveal any obvious attorney error. We therefore reject Sakar's claim that he is entitled to reversal of his convictions simply because he was represented by Sidell.

In his brief to this Court, Sakar raises one more claim: he contends that Sidell was incompetent for failing to file a pre-trial motion under a local Bethel court rule that allowed expansion of the geographic jury selection area up the Kuskokwim River to the Athabascan villages situated upriver from Bethel, if one of those Athabascan villages is the site of the crime.

---

[7] *Ibid.*

This issue was not raised in the trial court, and the current record contains no inquiry or findings regarding the reasons why Sidell did not pursue the suggested motion. Accordingly, this claim cannot be raised on direct appeal. Rather, it must be raised in a petition for post-conviction relief. [8]

*Because Sakar's case became final for purposes of retroactivity analysis years before Blakely was decided, Blakely's holding does not apply to Sakar's case*

In June 2004, almost four years after the superior court entered judgement against Sakar, the United States Supreme Court decided *Blakely v. Washington*. [9] *Blakely* announced a new interpretation of the Sixth Amendment right to jury trial — enlarging that right so that it applies to certain sentencing proceedings. Under *Blakely*, if the State proposes an aggravating factor that will expand the court's sentencing authority beyond the maximum sentence that would otherwise apply, and if that aggravating factor rests on facts other than the defendant's prior convictions, the defendant is entitled to have a jury decide the aggravating factor, and the defendant is entitled to demand that the government prove the aggravator beyond a reasonable doubt. [10]

However, this rule applies only to cases that were tried after *Blakely* was announced or that were pending on direct review at the time *Blakely* was announced. [11]

---

[8] *See Burton v. State*, 180 P.3d 964, 968-69 (Alaska App. 2008); *Sharp v. State*, 837 P.2d 718, 722 (Alaska App. 1992); *Barry v. State*, 675 P.2d 1292, 1295-96 (Alaska App. 1984).

[9] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[10] *Blakely*, 542 U.S. at 303-04, 124 S.Ct. at 2537-38.

[11] *State v. Smart*, 202 P.3d 1130, 1147 (Alaska 2009); *Haag v. State*, 117 P.3d 775, 783 (Alaska App. 2005).

Sakar was sentenced in August 2000, well before the *Blakely* decision was announced. However, Sakar argues that, because he was granted the right to pursue the present late appeal, his conviction retroactively became (and currently remains) non-final — thus entitling him to the benefit of the holding in *Blakely*.

There are few cases that address this issue, but those cases reject Sakar's position. For instance, in *Gutermuth v. State*,[12] the Indiana Supreme Court ruled that a defendant who was allowed to file a late appeal was nevertheless subject to the law that would have governed the defendant's appeal if it had been timely filed.[13] The Indiana Supreme Court reasoned:

> Belated appeals are filed by defendants who have been diligent in requesting permission to file belated notices of appeal and have no fault in failing to file a timely notice of appeal. If they have been found faultless and diligent, they should not be penalized for filing a belated appeal. But they also should not be rewarded for their delay.[14]

The Sixth Circuit reached the same conclusion in *Wheeler v. Jones*.[15] The defendant in *Wheeler* filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing (among other things) that the jury instructions at his trial in state court contained an improper presumption that violated his right to due process under *Sandstrom v. Montana*.[16]

---

[12]  868 N.E.2d 427 (Ind. 2007).

[13]  *Gutermuth*, 868 N.E.2d at 433.

[14]  *Id.*, 868 N.E.2d at 434 (citations omitted).

[15]  226 F.3d 656 (6th Cir. 2000).

[16]  *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Wheeler was convicted before *Sandstrom* was decided, and Wheeler did not originally appeal his conviction — thus allowing the conviction to become final. But after *Sandstrom* was decided, the Michigan Supreme Court granted Wheeler leave to file a late appeal (an appeal that was ultimately denied in state court). [17]

In his federal habeas petition, Wheeler made the same argument that Sakar makes here: the claim that, because he was granted the right to pursue a late appeal, his conviction should no longer be considered final, and thus he should be able to claim the benefit of any intervening developments in the law. [18]

The Sixth Circuit rejected this argument, holding that even though Wheeler's right of appeal was revived as a result of his successful collateral attack on his conviction, Wheeler's revived appeal was not the exact equivalent of a timely direct appeal, at least for retroactivity purposes. [19] Instead, the court held that Wheeler's revived appeal should be viewed (for retroactivity purposes) as a continuation of his collateral attack on his judgement. Thus, despite Wheeler's new opportunity to pursue an appeal, Wheeler's criminal judgement still became final (and remained final) for retroactivity purposes when Wheeler's original time for filing an appeal expired. [20]

The court noted that if Wheeler's position were adopted, "state court judgments would never attain finality because they would always be subject to reconsideration on a motion for a delayed appeal." [21]

---

[17]  *Wheeler*, 226 F.3d at 658.

[18]  *Id.* at 659.

[19]  *Id.* at 659-660.

[20]  *Ibid*.

[21]  *Id.* at 660.

Sakar does not cite any contrary authority. Instead, he argues that the relevant question is whether, if Sidell *had* filed the appeal he promised, Sakar's appellate attorney might have been alerted to a potential *Blakely* claim *at some point before Sakar's hypothetical appeal was resolved*.

Sakar notes that *Blakely*'s precursor, *Apprendi v. New Jersey*,[22] was decided on June 26, 2000, shortly before the superior court distributed Sakar's judgement. Sakar argues that, if Sidell had filed an appeal, Sakar's appellate counsel might have read *Apprendi* while the appeal was pending, and might have realized that the holding in *Apprendi* could potentially be expanded to give defendants the right to jury trial on aggravating factors — as the Supreme Court held four years later in *Blakely*.

Sakar further speculates that, if a timely appeal had been filed in his case, there is even a possibility that this appeal would still have been pending four years later when *Blakely* was decided. Sakar suggests that it might have taken this Court two or three years to decide his appeal, and then the Alaska Supreme Court might have taken another several months to decide his petition for hearing. Sakar also points out that either this Court or the supreme court might have remanded his case to the superior court for further proceedings — thus keeping his conviction from becoming final for an even greater amount of time.

Finally, Sakar suggests that his appellate counsel might have been following developments in the criminal law, that his counsel might have learned when the petition for certiorari in *Blakely* was first filed (in May 2003), and that his counsel might have then asked this Court or the Alaska Supreme Court to stay his case pending the United States Supreme Court's resolution of *Blakely*.

---

[22]   530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Sakar's arguments hinge on speculation and hypothetical possibilities. Having considered those arguments, we agree with the decisions reached in *Gutermuth* and *Wheeler*: Even when a defendant pursues post-conviction relief and obtains the right to file a late appeal, the defendant's conviction should still be considered "final" for retroactivity purposes when the defendant's original time for filing an appeal expired.

Thus, if a later appellate decision effects a change in the law, and if that change is only applicable to cases that were on direct appeal when that decision was issued, the pertinent question is whether the defendant's *original time* for filing an appeal had expired when the new decision was issued. This rule of retroactivity is not altered by the fact that the defendant later pursues a collateral attack and is granted the remedy of pursuing a late appeal.

Accordingly, we conclude that Sakar is not entitled to retroactive application of *Blakely*.

*Conclusion*

We AFFIRM the judgement of the superior court.